Indian Ocean on March 8, 2014. Elizabeth Smith, as personal representative of the sponsors, Nancy King, other statutory beneficiaries, and the estate of the MH370 passenger, seek to determine how they would be seized at L versus Malaysia Airlines Airhead, doing business at Malaysia Airlines at L. Mr. Rosenthal for Appellants Gaspard at L, Ms. Hubbard for Appellants Wood and Mr. Wilk for Appellants. Good morning. Good morning, Your Honor. May it please the court, Stephen Rosenthal on behalf of the Gaspard and Wiesner plaintiffs, otherwise known as the Motley Rice Group. The mystery of the disappearance of flight MH370 was unprecedented in aviation history, and that's quoted from the official ICAO Annex 13 report. Those unprecedented circumstances give rise in the law to an equally exceptional constellation of variables applicable to the Form 9 Convenience Analysis. You have claims against the U.S. manufacturer of a United States-made aircraft, Boeing, that was lost at sea where virtually no useful wreckage was found for piecing together what happened in the accident. Filed in the only forum in which jurisdiction was almost certain to be obtained against the manufacturer, or in this case, certain. But now Boeing has stipulated to accept and be amenable to jurisdiction of the Malaysian courts. Correct. And obviously, that was not knowable at the time that the litigation of these cases is a location where the crash did not happen. It's the country where there's no overwhelming majority or even plurality of the passengers who were from, and that the plane was not manufactured in. So those factors are very different from the vast majority, in fact, every international aviation case that we're aware of. In this case, the district court clearly abused its discretion by violating several different components of this circuit's law. And I'd like to, in the limited time that I have, rest on the briefs of the various parties and try to focus the court on two or possibly three issues, if time permits. And Ms. Hubbard may be speaking to one of those. Those are Synakam, Shee, and Rezipsa. In Synakam, the Supreme Court's precedent, that says that the court must presume the existence of jurisdiction, and then it can pass on to the FNC analysis. Here, the district court made that apparent presumption, but then actually factored the against keeping the case, and that's a violation of the Synakam principle. Secondly, with respect to Shee, just in terms of an overall lay of the land, this court, which the district judge did not have the benefit of at the time she ruled, clarified that there's a sliding scale of deference applied to the plaintiff's choice of forum. And that sliding scale is focused upon the degree to which the plaintiff's choice of forum indicates a legitimate choice, as to harass the defendant. And in this case, there's strong evidence, because of the existence of jurisdiction over Bowen here, that the plaintiff's choice was legitimate. With respect to the foreign plaintiffs, whom I'm addressing specifically, the district court's opinion makes no reference whatsoever to the application of that standard, even though it was referenced in the standards of the opinion that she did not apply it to the foreign plaintiffs. And one is left with the unfortunate conclusion that there was no deference given to those errors of law compel the court to reverse and remand, at a minimum for reevaluation of these factors in view of the new law in Shee and the correct application of Synakam. And the last major point is this res ipsa point, which is that because of the unique features of this accident, where really no real evidence was found to allow the international committee to reconstruct what was most likely the cause, the plaintiffs are candidly forced to rely upon the res ipsa, low-quit or fallback cause of action. And as a result of that, that places the burden and the onus on us to come forward and at least prove that the other potential causes of the accident were less likely than the one that we submit was the cause, which was a cascade of electrical failures that are pointing to Boeing as the responsible party. By not taking into account the fact that the res ipsa theory that the burden of proof, the district judge was placing the onus more on the defense and the fact that they would need this evidence regarding other potential causes. But in fact, it is we who really need it. It's a very different circumstance than most cases. So if I can focus on the Synakam. I don't understand that argument. Just because you have the burden of proof doesn't mean that the party, that the defendants don't need the evidence. No question. What the district judge said was that the plaintiff's theory of res ipsa low-quit or was a reason why the location of the evidence prong of the private interest test tips in favor of dismissal. And we submit that that's the wrong way to look at it. Clearly, the defendants wish to point to other things. They have not articulated which of those different theories, by the way, they believe to be the most likely one to be at issue in the case, which is its own problem. But the district court said it tips in favor of dismissal. But in our view, any difficulties in accessing evidence in Malaysia are more a burden on the plaintiff in this case. Because if we don't meet our burden of proof. Just because they're a burden, more of a burden on you doesn't mean that they're not a burden on the defendants and not a burden on the court and not a reason to transfer the case to Malaysia where the evidence would be more available. I think that the point I'm trying to make simply is that the district court said that the plaintiff's theory is something that weighs in favor of tipping it toward dismissal. And I'm not looking at the entirety of the private interest factors right now, which I think the court may be, the judge may be adverting to. But with respect to the theory of the case, that actually tips, if it tips in favor of the plaintiffs, at least is in equivoys and should not have been weighed in favor of dismissal. But I think that the more substantial points that are really weighty that truly independently compel reversal are the Sinachem problem and the non-application of the sliding scale of in deference to her, did not have the benefit of at the time she ruled. But the Sinachem problem is a very material problem here because it clearly says you must presume the existence of jurisdiction. And the district judge, despite having nearly 100 pages of briefing and oral argument on the subject of whether or not there's a waiver to the FSIA or not through the foreign carrier permit, and there were very substantial issues presented on that to the point where the defendants conceded that they were thorny and complex issues, decided, as was her right, not to rule on those issues. But what she should not have done is then put one arm behind our back and hold it against us, which is to say, with respect to the access to evidence held by MAS and MAB, the Malaysian carrier, that that would not be accessible because they might not be subject to jurisdiction. Well, she's got to presume that they're accessible. Are those jurisdictional issues forfeited, though, because they weren't raised in the opening briefs? No, I don't think so. In fact, the defendants actually asked the court. And due to word limits, I think it said that they weren't being briefed? Well, here's the thing. The district judge denied the motions to dismiss on jurisdiction. So it certainly wasn't incumbent upon the appellants to appeal those rulings in their favor. The defendants were the ones who had to raise those issues in their brief at a minimum, even though they had invited the district court not to rule upon them. They did not properly raise those issues in their briefs. So to the extent the court's question is, you know, were they forfeited? They were forfeited by the defense, and we have argued that in our reply brief. I see I'm into my rebuttal time. So I think having touched on these major issues, I'll reserve time and see the remainder to Ms. Hubbard for the primary argument. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Caitlin Hubbard, and I represent Mr. Thomas Wood, the brother of MH370 passenger Phillip Wood. As Mr. Rosenthal explained, the district court clearly abused its discretion in dismissing the consolidated actions for This especially is true with respect to Mr. Wood's actions and those of the other American plaintiffs in this case. The court knows Mr. Wood is an American citizen. He's suing on behalf of an American decedent against, in part, a major American manufacturer. His interests in litigating in the United States are truly as legitimate as they come, and the law, especially this circuit's precedent, requires that those interests be honored. You know from our briefing that we believe the district court failed to accord Mr. Wood's appropriate deference, and I don't wish to belabor that point. Instead, I'd like to dedicate my time to a separate error touched on briefly by Mr. Rosenthal, which is really the district court's treatment of this case as though it were like any other standard airplane crash litigation that has come before the federal courts. The district court dismissed Mr. Wood's action, along with the other consolidated actions, on the unsupported notion that we are going to have a standard causation trial requiring swaths of foreign evidence. It cited Piper, Payne, Chlorides, cases in which the planes were found and significant foreign interests were at stake, or, for instance, the jurisdictional issues were known and resolved. In this case, they were not. So how is this case really that different than Piper? Well, Piper, number one, had a true jurisdictional make-way in which you had a legal secretary that was representing all foreign families, and there were all foreign descendants on the plane. The plane also crashed in Scotland and was even stored in Scotland. There was a reference in Piper to the fact that there might be a need to examine the plane. There was evidence in that case, truly, and things to still be unearthed to determine a direct product defect or causation-type issue. The carrier also was foreign. We don't have that constellation of factors in this case. Well, you're assuming, I mean, your theory is that there was a product defect here, but, I mean, there were humans flying the plane, and there's significant evidence of human error. And to examine that, you need to examine witnesses, you know, the relatives of those humans and people who had interacted with them. They're all in Malaysia. Your Honor, I would disagree that there's significant evidence of any human error. There's a significant lack of evidence altogether. It's striking. Wasn't that the preliminary finding? There was preliminary finding of significant lack of evidence. There was no finding whatsoever as to a particular cause. I think that's a really important point to make. It's striking to me that in this case, plaintiffs are candidly proceeding in these actions on a recipsa theory, and yet we have MAB and MAS coming before the court and saying, well, although we've withdrawn this Article 21-XS amnesty... Your Honor, I thought the report said it was likely that the change of course was a result of manual rather than an automatic pilot. Respectfully, Your Honor, the report came to no conclusion. It said that due to the significant lack of evidence, it could neither confirm nor deny any possible factor. So, whatever... You're talking about the ultimate cause, I think, that Judge Randolph is talking about. I was talking about the change of course, and also the disabling of the communications on the plane was likely done manually. Your Honor, I think at most it's a probability. That's really what recips is about, though. That would be for a jury to determine, for us to put on evidence. In the Annex 13 report, by the way, most of this evidence is publicly known. Even the Air France court, in a footnote, said, look, I'm not going to weigh evidence one way or the other that's publicly known. And the fact is, all of these facts are largely undisputed. They're in the Annex 13 report, and under this court's precedent, an Inri Korean Airlines disaster, that is admissible. We're going to have experts in this case come in and put on a recip theory. And I see my time is almost done, so I would like to make just two preliminary points, two final points. And that is, with respect to MAS and MAV, the notion that they can go and withdraw an Article 21 excess damages defense in Australia, and then they can never and the record shows that they have not pointed to any other culpable actor in Malaysia. And yet, they can come into a U.S. court solely to procure a dismissal and say, you know what? We might revive that. Even though the plaintiffs are proceeding on recipsa, we can point to someone else as solely responsible. We respectfully submit that granting deference to that bears no relation to an analysis that, under this circuit's precedent, requires focus on the issues likely to be tried and genuinely in dispute. How would you obtain jurisdiction over the MAV, given the FSIA? Well, respectfully, Mr. Wood's actions have the strongest arguments for jurisdiction. That was conceded even below by Appleese. Under Sinekim, those are presumed in our favor. And to another point, we don't believe that that's waived by any means because we're appealing the district court's form nonconvenience analysis. That was error under Sinekim. We didn't have a duty to relitigate all of those issues that were set forth in 40- and 50-page briefs in the district court. So with respect to Mr. Wood and the FSIA, to directly answer your question, Montreal Convention jurisdiction, with respect to Mr. Wood, is clear. He's a resident. And the Air France case directly supports that decision, so it's misleading for Appleese to say that clearly there's no jurisdiction. But you're seeking to prosecute beyond the Montreal Convention, right? I'm sorry, Your Honor, help me understand your question. You're seeking to prosecute tort claims. Tort claims against Boeing, Recipsa. Yes, Your Honor. But not against MAV. MAV and MAS are purely Montreal Convention claims. And with that, we would respectfully ask that the court reverse. Thank you. Thank you. Good morning. May it please the court. I'm Eric Wolf, appearing on behalf of all the defendants. This was a terrible tragedy. It was unprecedented in a lot of ways. And it was the greatest aviation history, really, of all time. The district court treated it very carefully and applied settled precedent very carefully, allowed discovery on foreign nonconvenience, had massive briefing. We held a lengthy hearing here in December of 2017. And the district court wrote a very careful, thorough opinion that absolutely does not abuse its discretion in any respect. And I will just go through some of the items that were just discussed. I'll start with facts about the accident, and then I'll talk about precedent, and then I'll talk about the Foreign Sovereign Immunities Act issues. On the accident, I heard things that are just incorrect as cited in the district court's opinion and in the final report from the Malaysian investigation, the official investigation. So it is true in the report that they found it was more likely that a human being made that sharp left turn. That's right in the report, and that's cited in the district court's opinion. And the district court, to its credit, we held a lengthy hearing, and then the district court waited for that final report to come out so that it would have the benefit of that. And so the district court was able to put that into the opinion. So that big left turn that's made was manual. The report actually goes through. It's kind of interesting. They tried to get autopilot to do that turn with the speed and the angle that it was done. They know the speed and the angle of the turn, and autopilot can't do the turn like that. So they know that a human being did that. They also said it was more likely, just before that turn, the communication system is turned off. Not entirely because there's still satellite communication, but the communication system is turned off. And this is also just as the aircraft is leaving Malaysian airspace. Those actions... Does the pilot have control over the oxygen supply to the cabin? Yes, the pilot would have control over that. And there's been speculation about what would... Assume somebody takes control of the plane, then what do you do? The pilot could put on his own oxygen, depressurize the cabin, and that would render everybody unconscious. That's a scenario that could have occurred. Then the plane flies for many hours. Doesn't that all go to the merits? Talking about jurisdiction here, we have, at least in the case of Mr. Wood, we have an American plaintiff seeking wrongful death claims for an American decedent against an American company. Why shouldn't we defer to that really strong interest? For several reasons. And it's not just an American company. You also have the other defendants who are not American companies and an individual. First of all, on the liability evidence issues, Mr. Wood is no different than any of the other plaintiffs. So Mr. Wood has a res ipsa loquitur theory. And under that theory, he says he can rule out other causes. So he needs to rule out this potential cause, among others, that is more likely, which is that a human being interfered as opposed to some defect in the airplane. So all those things would be ruled out with Malaysian evidence. And, in fact, evidence from Boeing has not figured at all in any of this. So they're not pointing to some aspect of the plane that, oh, we need to go to the state of Washington and learn about that. That's not part of the background here. Everything is in Malaysia. And then it's not just control of the airplane. You also have maintenance. You also have the final report notes that air traffic control waited over four hours longer than they should have to alert that this plane had deviated from its flight path. You have the military seeing it on radar and not reporting it. In fact, taking so long to report it that the initial search was in the wrong area. It was in the South China Sea, even though the military knew that the plane had turned. So every decedent here is currently being represented in other proceedings, and a number of them are in Malaysian proceedings. And in the Malaysian proceedings, they list out all these other defendants, all these other entities that could hold some responsibility. And Boeing's point is that if it's all about Malaysian evidence and if there's other Malaysian entities that are involved, you can't bring any of that evidence or any of those entities into a U.S. court proceeding. And that is very unfair, and it is indistinguishable from Piper and Payne. And you asked about Piper, and I heard it said that the district court made some error by treating it like any other accident. Well, actually, it's much more extreme than those other accidents. I mean, Payne, this court's opinion in Payne, which is a very good opinion. It's from 1980, so it's not the most recent opinion, but it's very well done. That was a helicopter crash in the North Sea, relatively small accident when you think of, like, the amounts of evidence and the parties and whatnot. This case, far larger, far more evidence, farther away. So if form nonconvenience was correct in Payne, and in Payne you had an American decedent who was working on an oil rig, and you had an American plaintiff, his mother, and this court affirmed the dismissal. If that applies in Payne, Payne is still good law. Payne is cited multiple times in Piper as good law, including in footnote 23 of Piper, which says that having an American citizen does not automatically mean you can't have form nonconvenience. If Payne is still good law, then the district court here could not have abused its discretion. Where do matters stand in the parallel proceedings in Malaysia? I'm sorry, what? Where do matters stand in the parallel proceedings in Malaysia? I don't have a current update, but at the time of the district court's decision, nearly all of the decedents in this proceeding were represented there. Some of them represented by Motley Rice that saw a stay. They wanted the Malaysian court to wait for litigation here to determine whether it was going to proceed in the U.S., and the Malaysian court denied that. So it moved forward. There was also a discovery dispute, or not a dispute, but discovery was propounded, and that's the last I know. Boeing is not in those cases. Boeing has, as was discussed, Boeing has stipulated that it will participate in the proceedings. I'm just wondering how that impacts the evidentiary question about access to the evidence. If the evidence has already been produced in Malaysia, I take it that both sides will have access to it. In Malaysia? Well, if they have it in Malaysia, they can have it here. I mean, all you have to do is digitally transfer it. I'm not, I suppose that could be true with certain documents. I don't think that would be true with human beings. And you have a number of government actors. For example, you have Malaysian investigators in the civil investigation. Then you had a Malaysian police investigation, which went to the pilot's residence and seized material from the pilot's residence. And I don't see any way that things like that are going to come to the United States. You have some wreckage. Some of it's in Malaysia. Some of it's elsewhere. Typically, in these accidents, the evidence doesn't travel to an American courtroom. I mean, in a lot of accidents, you have the flight data recorder and the cockpit voice recorder, and those things don't travel. You might get a transcript. But, like, the Boeing investigators who provide technical analysis on things, they did not receive access to most of the documents of the investigation. So I'm not sure that what happens in Malaysia can just be transported here, and certainly not the human beings. On the Sinochem and Foreign Sovereign Immunities Act questions, there's a bit of misdirection in how they're being discussed. So the first Foreign Sovereign Immunities Act question is, can the plaintiffs proceed against the airline or MAB? That's kind of the initial Foreign Sovereign Immunities Act question. And I don't read the district court's opinion as saying one thing or the other about that. But then there's the question of, can Boeing sue the airline, which is pretty common in these aviation accidents, which is can you implead usually the pilot or the operator or something like that. And on that, there was no argument, really, that Boeing could implead MAS, because MAS would have sovereign immunity on that. It's a national carrier. So that's what I read the district court is pointing out about the Foreign Sovereign Immunities Act. It's in the discussion about Boeing. Do they have immunity in Malaysia as well? I mean, they have not put forward immunity in Malaysia. So I don't – in terms of a claim from Boeing? Yeah. Boeing is not there yet. I don't know the answer to that, actually, Your Honor. But I have proceeded on the assumption – I mean, if they would, then it's a wash. I suppose that would be true. I have proceeded on the assumption that in a Malaysian proceeding, which we've stipulated we would participate in, and obviously the other defendants have said that they think this case should proceed in Malaysia. I have proceeded on the assumption that those defenses, as raised here, would not be raised there. The last thing I'll say on the – sort of the district court's treatment of Mr. Wood, the district court made clear that it was looking in isolation at the sort of different types of plaintiffs. Most of the plaintiffs have no connection to the United States at all. In fact, a number of the plaintiffs can't even establish Montreal jurisdiction, so they have no way of keeping the airline in a proceeding. So it's really only two or three potential plaintiffs who can even raise these FSIA issues, but Wood is the most prominent. And if form nonconvenience is appropriate for Wood, then – Why would some plaintiffs not have jurisdiction under the Montreal Treaty? So the Motley Rice plaintiffs are mostly Chinese, and under Montreal it's based on domicile, where you purchased your ticket, and then if you had a destination in the U.S. or something like that, which of course that's not the case here. So they don't have any of that. You only have Mr. Wood, who they make the argument that he had a domicile in the United States, even though he had been working for quite a few years overseas. So he's using that route. And then he also made an argument, which a couple other folks made, that sort of how they purchased their ticket should count. So he used an American Express-related portal through IBM, and they say, well, that would count as having purchased it in the U.S., even though he actually was in Malaysia when he did it. And then there was another person, I think, who had used – again, they weren't in the U.S., but they had used something that got routed through orbits in Chicago, and they tried to say that that should count under Montreal, so that's what they do there. The district court was very careful in looking at each individual. And with respect to Mr. Wood, pain is really not distinguishable. Judge Breyer wrote a very good opinion in the Air France case that in certain respects is nearly identical. It had two Americans. They had been working in Brazil. They were actually from Texas, and he agreed that that case should proceed in France. Because on liability, Mr. Wood is no different than anyone else in terms of where the evidence is going to be. Yes, on damages, he's going to have more evidence that's in the United States, but that's just private interest. Then when we get to public interest, the Malaysian interest is overwhelming. The National Carrier of Malaysia, they led the investigation. There were 38 Malaysians on board. It took off from Kuala Lumpur. Judge Breyer used an analogy that I think is helpful in sort of thinking through public interest, and that is to just make everything American and see how we would feel if litigation were somewhere else. So if we had – let's say America had a national carrier, like maybe Amtrak had an airline, and then that national carrier was – I know. That national carrier was taking off from Washington, D.C. on an international flight, and just after it leaves U.S. airspace, it makes some turn, and then it goes out to sea and crashes. And the investigation is led by the United States. There are allegations of potential criminal conduct by the crew that was based in the United States. No one would think that that litigation, that the most public interest in that litigation would be somewhere else. I think that would be true even if it were an Airbus airplane. I mean, should U.S. courts weigh foreign public interests the same as it weighs U.S. interests? I'm sorry, say that one more time. You know, in the public interest analysis, should a U.S. court consider the foreign public interests with the same weight that it would give to American public interests? So certain foreign interests, yes, and Piper speaks to this. So Piper talks about the interest in regulating the manufacturer, and it said that – the Supreme Court said we don't think that interest is sufficient. And other courts have pointed out that – and this is certainly the case. You know, these airplanes are sold all around the world, operated all around the world. Every other country that is flying on these airplanes, is regulating these airplanes, has an interest in their safe operation and design. And so I think there is an American interest, and that's acknowledged, but the foreign interest in safety is likely to be about the same in most cases. There's a little bit of extra interest for Mr. Wood because he's an American. The district court acknowledged that. But in the overall, in the totality of the public interest, the Malaysian public interest is significantly greater, and there was no abuse of discretion. Before you sit down, I have one question that I'm not clear about. As I understand it, the plaintiffs say, Mr. Wood as plaintiff, says that the court erred by attributing weight to the fact that Mr. Wood lived in Malaysia. And the plaintiffs say that's a mistake because – an error because the real question is whether his relatives, representatives, whatever, are Malaysian and not. They're in the United States. And the district court did say that. Yeah. But what's your answer to the plaintiff? I think that – I think the most reasonable way to deal with that is probably to recognize what they otherwise recognize, which is there is a sliding scale. And so to get the most deference, if you were an American living and working in the U.S. and you're represented by – or your state is represented by folks who are in the U.S., that would be the most. And he's a couple ticks below that because he had been working overseas for a while. And one way that I've thought about this is let's say he had a car accident when he was in Malaysia and he claimed that, oh, it was an American car and it was defective. But there was a police report that said actually somebody else was driving it, that there was some involvement of somebody there. And that would seem entirely foreign. It wouldn't seem unreasonable. And that would be a product of the fact that he's living and working overseas. So I think the district court was entirely reasonable in not giving the maximum possible deference. And then on the representatives, this did occur in Piper where you had a legal secretary who became the administratrix. Obviously, that's not the situation with Mr. Wood. That was basically the situation with some of the other decedents here. But for Mr. Wood, it's different. And so you don't take that Piper discount off of it. There's more because it is family. Thank you. All right, how much time did counsel have left? In that two minutes, I'll try to hit six points. That may or may not be possible. Starting with the last point about the degree of deference to the American family, unquestionable American family, Wood, there should have been no taking off from the top level of deference because at a minimum in a motion to dismiss, you've got to defer and decide fair inferences in favor of the non-movement. And here there was evidence of an intention to return to the United States for the Wood family  With respect to access to evidence, I believe defense counsel said that most of this stuff was in Malaysia. But what's not mentioned is that Boeing, in its declaration, said it has the maintenance records, or many of the maintenance records, and the training records. That's at Joint Appendix 162. There's a lot of information that Boeing picks up as a participant to the NTSB, American representative to the international investigation. Secondly, with respect to the issue of completing MAS and MAB that Boeing wishes to do, the court found this to be, the district court, a relatively dispositive point at page 762 of the Joint Appendix. In her opinion, she says that on balance, the inability to implede third parties is what tips the private interest factors. Our position is that she could not have made that conclusion without mistakenly engaging in the SINICM analysis because she found that MAS and MAB would not be accessible. Now, one of the questions the court asked was whether or not there is an ability of Boeing, with respect to the jurisdictional question that's not really been briefed before the court, to bring in MAS and MAB. And the answer is it was argued. I direct the court to the transcript of the hearings before the district judge where counsel, Mr. Altman, my former partner now on the federal bench, did make the argument that, in our view, and it was briefed, the same waivers that were applicable to the FSIA may also imply the ability in a waiver by Malaysia to be sued by Boeing. I see I'm down to the last moment, so let me try to wrap up with this. The Malaysian government defendants are of minor importance. If you look in Docket Entry 37-1, there's a complaint filed in Malaysia. Most of the claims filed there are about post-accident infliction of emotional distress by failing to locate the downed plane in time. And so those are not the main issues to be tried. The main issues to be tried in this case are inevitably and intellectually a res ipsa scenario, and that's a scenario in which both sides will have equal access to evidence, especially if MAS and MAB are in this case and what Boeing has. The district judge's ruling really did not fairly balance the factors because of, one, the sign of chem error and, two, primarily the failure to give the sliding scale of deference and measure that both to the Wood family and as well to the foreign plaintiffs. For those reasons, the court cannot have confidence in the balancing that the district court did, and we urge the court to reverse and remand. Thank you. We'll take the matter under advisement. For more information visit www.fema.gov
judges: Wilkins, Rao, Randolph